UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| J. NOAH, B.V.,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>NAVARRO GRAY, WILLIE J. MAXWELL, II also known as FETTY WAP doing business as ZOO GANG TOURING, ZOO GANG MUSIC, LLC doing business as ZOO GANG TOURING, ABC COMPANIES 1-5 and JOHN DOES 1-5,<br><br>　　　　Defendants. | Case No. 20-cv-20560 (SDW) (LDW)<br><br>**DECLARATION OF<br>KENNETH R. RUSH, ESQ.** |

I, KENNETH R. RUSH, under penalty of perjury, hereby declare as follows:

1. I am a principal partner of DiLorenzo & Rush, attorneys for plaintiff defendant Navarro Gray in the above-captioned action.

2. I submit this declaration in support of Defendant's motion to dismiss Plaintiff's complaint pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

3. On February 2, 2021, Plaintiff stipulated and consented to the extension of Defendant Gray's time to answer or appear to February 5, 2021.

4. This lawsuit concerns breach of contract-related claims asserted by plaintiff J. Noah, B.V. See copy of Complaint filed in this matter, attached hereto as Exhibit "A".

5. Plaintiff alleges that it entered into a services agreement with defendant Zoo Gang Touring for the services of Fetty Wap[1], and that the defendants breached the agreement.

---

[1] Defendants other than the movant are collectively referred to herein as "Fetty Wap".

See Exhibit A.

6. More specifically, it is alleged that Plaintiff and Fetty Wap agreed in the contract and in an amended contract that Fetty Wap would perform twenty-four (24) live concerts in Europe in exchange for monetary consideration. It is alleged in the complaint that Fetty Wap failed to perform thirteen (13) of the concerts. See Exhibit A.

7. The purported contract at issue was attached to the filed complaint. See Exhibit A.

8. Plaintiff has asserted five causes of action against the Fetty Wap defendants and Defendant Gray, including: breach of contract; conversion; conspiracy; fraudulent misrepresentation; and unjust enrichment. See Exhibit A.

9. Defendant Gray is an attorney admitted to the Bar of the State of New Jersey, Attorney ID number 042822008.

10. Defendant Gray acted as agent and attorney for Fetty Wap in connection with the subject contract, and executed the contract on Fetty Wap's behalf as "Authorized Signatory". See Exhibit A.

11. Defendant Gray was not an actual party to the subject contract. See Exhibit A.

12. As is apparent from the alleged contract attached to Plaintiff's complaint, Defendant Gray did not undertake any direct or personal obligations to the Plaintiff. See Exhibit A.

13. The complaint does not allege that Defendant Gray is himself a party to the contract. See Exhibit A.

14. The complaint does not allege that Defendant Gray undertook, on behalf of himself, any direct obligations to the Plaintiff. See Exhibit A.

15. The complaint does not allege that Defendant Gray himself committed any tortious or wrongful acts with respect to the Plaintiff.

16. The complaint contains a single specific allegation with respect to Defendant Gray, *to wit*, that "business dealings pertaining to the subject matter of this action were all consummated through Defendant Gray". See Exhibit A, ¶ 4.

17. Defendant Gray is not a proper party to this lawsuit.

18. The complaint fails to state a claim against Defendant Gray upon which relief can be granted.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

Dated: February 4, 2021
Hackensack, New Jersey

_____
KENNTH R. RUSH

# EXHIBIT A

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| J. NOAH, B.V.<br>Sportlaan Driene 8<br>7552 HA Hengelo<br>The Netherlands    Plaintiff | : | CIVIL ACTION<br><br>NO. 2:20-CV-20560 |
| vs. | : | **JURY TRIAL DEMANDED** |
| NAVARRO GRAY<br>10 Banta Place, Suite 114<br>Hackensack, N.J. 07601    AND | | |
| WILLIE J. MAXWELL, II, a/k/a<br>FETTY WAP d/b/a ZOO GANG TOURING<br>1401 Valley Road<br>Wayne, N.J., 07470    AND | : | |
| ZOO GANG MUSIC, LLC d/b/a<br>ZOO GANG TOURING<br>1401 Valley Road<br>Wayne, N.J. 07470    AND | : | |
| ABC COMPANIES 1-5 and<br>JOHN DOE 1-5 | | |
| Defendants | : | |

## CIVIL COMPLAINT

### A. JURISDICTION AND VENUE

1. Jurisdiction is based upon diversity of citizenship, to wit, 28 United States Code, Sec. 1332.

2. Venue is proper under the Federal Rules of Civil Procedure, as the Defendants are all citizens doing business and/or residing within this District.

### B. THE PARTIES

3. Plaintiff J. NOAH, B.V. ("J. NOAH") is a Dutch limited liability company with its principal place of business located at the above-captioned address; Plaintiff J. NOAH operates as a music purchaser facilitating live musical performances before enthralled audiences

1

worldwide.

4. Defendant NAVARRO GRAY ("GRAY") is, for purposes herein, the partner and/or agent of the co-Defendants, engaged in the music business as a purveyor of talent and an entrepreneur who wears many hats, assuming different roles; for purposes herein, Plaintiff's business dealings pertaining to the subject matter of this action were all consummated through Defendant GRAY; Defendant GRAY resides and does business within this District at the above-captioned address.

5. Defendant WILLIE J. MAXWELL, II a/k/a FETTY WAP d/b/a ZOO GANG TOURING ("MAXWELL") is a rap performer with the pseudonym "Fetty Wap" who resides and does business within this District at the above-captioned address.

6. Defendant ZOO GANG MUSIC, LLC ("ZOO GANG") is a New Jersey limited liability company doing business within this District at the above-captioned address.

7. Defendants ABC Corps. 1-5 and John Does 1-5 are fictitious entities or persons currently unknown to Plaintiff J. NOAH, B.V. who may, upon investigation, be shown to have liability in this matter.

8. At all times material hereto, the Defendants acted on behalf of themselves, and/or through the acts of their employees, agents, representatives, servants, and the like, acting within their course of employment and scope of duties.

C. **THE FACTS**

9. On or about February 13, 2019, Plaintiff J. NOAH entered into an express written agreement (hereinafter also referred to as "the agreement) with Defendants GRAY, MAXWELL and ZOO GANG, the salient parts of which provided for Plaintiff to pay Defendants the principal sum of Five Hundred Thousand Dollars U.S. ($500,000) in consideration for Defendants agreement to have Defendant MAXWELL perform at a "FETTY WAP EUROPEAN TOUR 2019", consisting of Twenty-Four (24) live performances from April 24, 2019 through May 19,

2

2019. A copy of the express written agreement is attached hereto and marked as Exhibit "A" and incorporated by reference as though fully set forth herein and made a part hereof.

10. The subject agreement called for various additional considerations to be provided to the Defendants, such as airfare, hotels, per diems, and other perks commensurate with those provided in this type of agreement.

11. The subject express written agreement was signed by Defendant GRAY on behalf of himself and the co-Defendants.

12. On or about April 9, 2019 the parties entered into an addendum to the subject agreement, titled, "Amendment to Artist Performance Agreement" (hereinafter also referred to as the "Amendment"), the relevant terms of which merely postponed the tour to September 17, 2019 to October 10, 2019; the Amendment also called for Twenty-Four (24) live performances by MAXWELL at the same aggregate price of $500,000 payable by Plaintiff. A copy of the Amendment is attached hereto and marked as Exhibit "B" and incorporated by reference as though fully set forth herein and made a part hereof.

13. The Amendment was signed by Defendant GRAY on his own behalf and on behalf of co-Defendants.

## COUNT ONE: BREACH OF EXPRESS WRITTEN AGREEMENT
## PLAINTIFF v. ALL DEFENDANTS

14. Paragraphs 1 through 13 inclusive, are incorporated by reference as though fully set forth herein and made a part hereof.

15. Plaintiff J. NOAH fully performed under both the subject Agreement and the Amendment, paying $500,000 to Defendants for Twenty-Four (24) performances as agreed.

16. During the tour, and without cause or justification, after Eleven (11) performances, Defendant MAXWELL suddenly left the tour, failing to complete the remaining Thirteen (13) shows of the European tour.

3

17. Despite Defendants' repeated representations to the contrary, MAXWELL never returned to the tour, and never completed the remaining performances for which Defendants were obligated under the subject Agreement and Amendment.

18. Defendant MAXWELL's unjustified, without cause, inexcusable failure to perform the remaining performances, as required pursuant to the subject Agreement and Amendment thereto, constitute a material breach of the parties' express written agreement.

19. Upon Defendants' wrongful unilateral cancellation of the remaining performances, Plaintiff immediately demanded refund of $205,825.03, representing the amount already paid to Defendants by Plaintiff for the remaining 13 performances unilaterally cancelled by Defendants.

20. Despite Defendants' repeated promises to refund these monies, Defendants refused to refund ANY of the monies which it received for these performances; Defendants' failure to promptly and without delay refund these monies constituted a further material breach of the subject express written Agreement, which provides at Paragraph 11 the affirmative duty of Defendants to,

> "refund to J. Noah B.V. at the first request of Purchaser [J. NOAH], and without any delay . . ."

See Exhibit "A", Express Written Agreement at Paragraph 10.

21. As a direct and proximate cause of Defendants' material breach by their unforeseen and unexpected failure to perform, Plaintiff sustained consequential damages for promotional, marketing, advertising, staff, tech personnel, and related expenses in excess of Fifty-Four Thousand Dollars ($54,000), and sustained additional consequential damages related to the costs of refunding customers' tickets and convenience fees, and expenses related thereto, for a sum to be proven at trial.

22. As a direct and proximate cause of the Defendants' material breach by their unforeseen and unexpected failure to perform Plaintiff sustained incidental damages, inclusive but not limited to loss of goodwill and reputation, and loss of prospective earnings.

23. Defendants are liable to Plaintiff for their material breaches of the express written Agreement and Amendment.

WHEREFORE on Count One, Plaintiff J. NOAH demands judgment in its favor, and against all Defendants, jointly and severally, as follows:

a) For compensatory damages totaling $205,825.03;

b) For consequential damages totaling in excess of Fifty-Four Thousand Dollars ($54,000);

c) For incidental damages in a sum to be proven at trial;

d) For interest thereupon, and for such other relief as this Court may deem proper.

## COUNT TWO: CIVIL CONVERSION
## PLAINTIFF v. ALL DEFENDANTS

24. Paragraphs 1 through 23, inclusive are incorporated by reference as though fully set forth herein and made a part hereof.

25. Plaintiff paid Defendants the total aggregate sum of $500,000 prior to Defendants' completion of their obligations under the parties' express written agreements.

26. Up to and until Defendant MAXWELL performed each show, Defendants were not entitled to convert Plaintiff's deposit monies to Defendants' personal accounts, for Defendants' own usages and benefits, constituting a misappropriation of Plaintiff's funds.

27. Defendants' squandering of the aforepleaded monies of the Plaintiff constitutes actionable civil conversion.

28. As a result of Defendants' civil conversion, Plaintiff sustained damages as aforepleaded.

5

29. The civil conversion by Defendants' was outrageous, and was intentional, willful, wanton, and with reckless disregard to the rights of the Plaintiff.

30. Accordingly, Plaintiff is also entitled to an award of exemplary and/or punitive damages.

WHEREFORE on Count Two, Plaintiff J. NOAH demands judgment in its favor, and against all Defendants, jointly and severally, as follows:

a) For compensatory damages totaling $205,825.03;

b) For consequential damages totaling in excess of Fifty-Four Thousand Dollars ($54,000);

c) For incidental damages in a sum to be proven at trial;

d) For exemplary and/or punitive damages in a sum to be proven at trial;

e) For interest thereupon, and for such other relief as this Court may deem proper.

## COUNT THREE: CIVIL CONSPIRACY

## PLAINTIFF v. ALL DEFENDANTS

31. Paragraphs 1 through 30, inclusive are incorporated by reference as though fully set forth herein and made a part hereof.

32. The Defendants engaged in a civil conspiracy to convert Plaintiff's money and to defraud Plaintiff of its money, causing damages to Plaintiff as aforepleaded.

33. The Defendants acted in tandem to induce Plaintiff to pay for Defendant MAXWELL's performances up front in advance, having actual or constructive knowledge that MAXWELL would not perform, and with no intent of returning Plaintiff's funds.

34. Defendants' lack of intent to return Plaintiff's funds has been amply demonstrated by the failure of Defendants to return **any** of Defendants' wrongfully obtained, retained and converted funds.

35. Defendants' civil conspiracy was willful, intentional and with reckless disregard for

6

the rights of Plaintiff, entitling Plaintiff to an award of exemplary and/or punitive damages.

36. Defendants are liable unto Plaintiff for civil conspiracy.

WHEREFORE on Count Three, Plaintiff J. NOAH demands judgment in its favor, and against all Defendants, jointly and severally, as follows:

a) For compensatory damages totaling $205,825.03;

b) For consequential damages totaling in excess of Fifty-Four Thousand Dollars ($54,000);

c) For incidental damages in a sum to be proven at trial;

d) For exemplary and/or punitive damages in a sum to be proven at trial;

e) For interest thereupon, and for such other relief as this Court may deem proper.

## COUNT FOUR: FRAUD/DECEIT/MISREPRESENTATION
## (AGAINST ALL DEFENDANTS)

37. Paragraphs 1 through 36 inclusive, are incorporated by reference as though fully set forth herein and made a part hereof.

38. Defendants falsely represented to Plaintiff, and deceived Plaintiff, by representing that Defendant MAXWELL will dutifully perform the agreed-upon 24 live shows.

39. Plaintiff justifiably relied on Defendants' misrepresentation, and was induced to pay funds to Defendants in advance of Defendants' performance.

40. Defendants' knew or should have known that MAXWELL would not perform all of the agreed upon 24 live performances.

41. Notwithstanding the same, MAXWELL did not perform 13 of the shows, and Defendants unlawfully retained $205,825.03 of Plaintiff's money to which they were clearly not entitled to keep.

42. Defendants' fraud was willful, intentional and with reckless disregard for the rights of Plaintiff, entitling Plaintiff to an award of exemplary and/or punitive damages.

7

43. Defendants are liable unto Plaintiff for fraud.

**WHEREFORE** on Count Four, Plaintiff J. NOAH demands judgment in its favor and against all Defendants, jointly and severally, as follows:

a) For compensatory damages totaling $205,825.03;

b) For consequential damages totaling in excess of Fifty-Four Thousand Dollars ($54,000);

c) For incidental damages in a sum to be proven at trial;

d) For exemplary and/or punitive damages in a sum to be proven at trial;

e) For interest thereupon, and for such other relief as this Court may deem proper.

## COUNT FIVE: UNJUST ENRICHMENT
## BREACH OF IMPLIED-IN-LAW (QUASI) AGREEMENT
## (AGAINST ALL DEFENDANTS)

44. Paragraphs 1 through 43 inclusive, are incorporated by reference as though fully set forth herein and made a part hereof.

45. There existed an implied-in-law agreement between the parties.

46. Defendants materially breached the implied-in-law agreement by unjustly receiving the benefit of receipt, retention, and conversion of Plaintiff's money for their sole benefit, to the detriment of Plaintiff.

47. As a direct and proximate result of Defendants' material breach, Plaintiff sustained damages as aforepleaded.

48. Plaintiff is entitled to its quantum meruit recovery for the amount of their damages as stated previously herein.

49. Defendants are liable to Plaintiff for breach of implied-in-law "quasi" contract.

**WHEREFORE** on Count Five, Plaintiff J. NOAH demands judgment in its favor, and against all Defendants, jointly and severally, as follows:

a) For compensatory damages totaling $205,825.03;

b) For consequential damages totaling in excess of Fifty-Four Thousand Dollars ($54,000);

c) For incidental damages in a sum to be proven at trial;

d) For interest thereupon, and for such other relief as this Court may deem proper.

Respectfully submitted,

Dated: December 30, 2020

**PETER BOWERS, P.C.**
By: */s/Alexander J. Ginsburg, Esq.*
Counsel for Plaintiff
NJ ATTORNEY ID NO. 03379-2010
Email: Alex@PeterBowersPC.com

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; NOTE: federal question actions take precedence over diversity cases.)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V. **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.



Sportlaan Driene 8, 7552 HA Hengelo, The Netherlands

Commercial Register # 62749285 VAT tax #: NL854942026B01

AGREEMENT, made this 13th day of February, 2019 between J.Noah B.V. (Hereinafter referred to as "Purchaser") for the Uk/European Tour of Zoo Gang Touring f/s/o Fetty Wap (hereinafter referred to as the "ARTIST"). It is mutually agreed between the parties as follows: The Purchaser J. Noah B.V. hereby engages the ARTIST Zoo Gang Touring f/s/o Fetty Wap. ARTIST hereby agrees to perform the engagement hereinafter provided, upon all the terms and conditions herein:

1. DATE(s) OF ENGAGEMENT: Tour to Commence on April 14, 2019 ending April 28, 2019 & May 07, 2019 To May 19, 2019 (European & UK Radius & Exclusivity Clause: 60 Days before the first performance date and 120 days after last date Artist shall sell all performances in this area solely to J. Noah B.V.)
2. HOURS OF ENGAGEMENT: 50 Minute Performance Fetty Wap (+20 Min Support Peter Jackson)
3. FULL TOUR PRICE AGREED UPON: $ 500,000.00 USD net to Fetty Wap
plus ONLY UK, European Travel flights & ground covered in country, hotels & per diems.
NOTE: no flights covered in or out of Canada or U.S. this is at artist cost as per proposal approved plus tour manager paid for and supplied by J. Noah for duration of both said tour time frames
4. ADDITIONAL PROVISIONS: artist video drop mandatory and posted on social media upon on sale
5. All payments shall be paid by wire transfer, money order, or cash as follows:
   A. $125,000.00 USD to be paid by J. Noah to and in the name of Artist account **on or before Wed, Feb 27/ 2019.**
   B. $125,000.00 USD to be paid by J. Noah to and in the name of Artist account **on or before Wed, March 20/ 2019.**
   C. $250,000.00 USD to be paid by J. Noah to and in the name of Artist account on or before two weeks of each designated show day until paid in full of $50K USD on April 1st, 8th, 15th, 22nd, 29th, May 6th of 2019
   D: Agreed by all parties that any agreed to afterparties will be paid in USD cash Upon confirmation of attendance night to Artist or Artist representation on the ground direct.
6. Purchaser J. Noah to supply ARTIST with the following: professional sound, lights, and all rider requirements negotiated with artist tour manager based on venue size and artist expectations.
7. ARTIST shall have the sole and exclusive right, but not the obligation to sell souvenir programs and other souvenir items including phonograph records in connection with and at the performance(s) hereunder and their receipts hereof shall belong exclusively to ARTIST with the exception of a percentage for Purchaser to be agreed between Artist and the PuRchaser.
8. J. Noah Agrees to Pay Canadian Artist Peter Jackson to be Official Support for 20 min to said tour and agrees to pay all expenses within Europe & UK and pay said artist $6,500.00 USD + artist representation 5% commission of $25,000.00 USD to ITA account supplied to J. Noah Due and payable On Feb 21/19. All funds above totally separate from the fees of the Artist.
9. Total Travel party for tour Fetty Wap = 6 (1 executive suite + 5 kings) + Peter Jackson = 2 (1 double)
10. If Performance of Artist's or Purchaser's obligations hereunder is made impossible or infeasible due to illness, accident or the occurrence of an Act of God which is beyond Artist's and Purchaser's control (such as war, natural disaster, death, or order of any government authority), each party's obligation hereunder shall terminate, and neither party shall have any claim for damages against the other party, subject to the obligation of Artist to promptly return to Purchaser any deposit or amount already paid. Notwithstanding the fore mentioned rights, the parties shall negotiate in good faith the possibility to postpone the Performance to a new date on the same terms.
11. In the event Artist cancels the Performance at any time or otherwise fails to perform on the agreed dates for other reasons then the reasons mentioned above, Artist shall refund to J. Noah B.V. at first request of Purchaser, and without any delay, any portion of the amounts already paid to Artist or his representatives, subject to the right of Purchaser to seek further damages. Notwithstanding the foregoing, either party may cancel this Agreement without further liability to the other party in the event such other party has materially breached this Agreement. All notices of cancellation must be in writing.
12. Artist acknowledges, accepts and approves that the Purchaser is the authorized agent of the Artist for purposes of the Performance and has full power and authority to enter on Artist's behalf into any agreement with respect to the Performance.



13. This Agreement shall be governed and construed in accordance with the laws of The Netherlands. The courts of The Netherlands shall have exclusive jurisdiction over any dispute arising out of or in connection with the Agreement.

14. Artist agrees to supply (1) promotional post (Europe flyer with all dates and on top of the flyer in writing on the flyer J Noah Presents) via all social media (Instagram, Facebook, Twitter etc..) and artist agrees to supply (1) video drop for all Europe dates saying something like "Thank You J Noah for bringing me to Europe. Come to my shows from April 14 till May 19". Artist will accept all Facebook events of the shows in Europe from April 14th till May 19th. The artist / management will supply purchasers as an admin to the artist his Facebook as an advertiser at purchaser cost. Artist will supply more videodrops for each show, 1 week before performance to boost promotion and post promo video what purchaser will make with approval from artist/ management.

15. Subject to change of dates, places and venues/clubs by Purchaser (provided that the Artist is notified timely and capacity of venue/club is similar and the total fee will remain the same if the number of performances is the same), tour dates are as follows:

FETTY WAP EUROPEAN TOUR 2019

| Date | City | Venue |
|---|---|---|
| APR 14/19 | GLASGOW, UK | O2 ACADEMY |
| APR 15/19 | MANCHESTER, UK | ACADEMY1 |
| APR 16/19 | BIRMINGHAM, UK | ACADEMY1 |
| APR 17/19 | NORWICH, UK | UEA |
| APR 18/19 | CARDIFF, UK | TRAMSHED |
| APR 20/19 | NOTTINGHAM, UK | ROCK CITY |
| APR 21/19 | LONDON, UK | BRIXTON ACADEMY |
| APR 23/19 | COPPENHAGEN, DENMARK | STORAGE VEGA APR |
| APR 24/19 | AARHUS, DENMARK | VOXHALL |
| APR 25/19 | OSLO, NORWAY | ROCKEFELLER |
| APR 26/19 | WIESBADEN, GERMANY | EUROPALACE |
| APR 27/19 | GIESSEN, GERMANY | ADMIRAL MUSIC LOUNGE |
| APR 28/19 | BERLIN, GERMANY | ASTRA |
| APR 29/19 | ARTIST TO TRAVEL TO USA AT OWN COST | |
| MAY 06/19 | ARTIST TO TRAVEL BACK TO EUROPE AT OWN COST | |
| MAY 07/19 | | |
| MAY 08/19 | BARCELONA, SPAIN | SHOKO CLUB |
| MAY 09/19 | MADRID, SPAIN | BLACKHOUSE |
| MAY 10/19 | RIGA, LATVIA | COYOTE FLY |
| MAY 11/19 | PARIS, FRANCE | LE MIX CLUB pending |
| MAY 11/19 | VILNIUS, LITHUANIA | LOFTAS pending |
| MAY 14/19 | AMSTERDAM, NETHERLANDS | MELKWEG |
| MAY 15/19 | MUNICH, GERMANY | BACKSTAGE |
| MAY 16/19 | ZURICH, SWIZTERLAND | DYNAMO |
| MAY 17/19 | STUGGART, GERMANY | LKA – LONGHORN |
| MAY 18/19 | BRESCIA, ITALY | NUMBER ONE |
| MAY 19/19 | HELSINKI, FINLAND | THE CIRCUS |

Purchaser: J. Noah B.V.

Jozef Wanno - Authorized Representative

Artist: Fetty Wap
Zoo Gang Touring ISO Fetty Wap

Navarro Gray - Authorized Signatory/ Fetty Wap

Case 2:20-cv-20560-SDW-LDW   Document 7-1   Filed 02/04/21   Page 17 of 18 PageID: 50
Case 1:20-cv-20560   Document 1-2   Filed 12/30/20   Page 1 of 2 PageID: 12

EXHIBIT B

## AMENDMENT TO ARTIST PERFORMANCE AGREEMENT

This Amendment April 9, 2019 has been executed by and between Zoo Gang Touring f/s/o Fetty Wap (hereinafter referred to as the "ARTIST") and J.Noah B.V. (hereinafter referred to as "PURCHASER").

Artist and Purchaser are parties to the Artist Performance Agreement dated February 13, 2019, concerning the UK/European Zoo Gang Touring f/s/o Fetty Wap (hereinafter referred to as the "Agreement").

It is mutually understood and agreed by and between the parties that the Tour will be postponed and the Agreement is amended as follows:

1. **Section 1 of the** Agreement is cancelled, declared void, and replaced with the following provision:

**TOUR RESCHEDULE AND NUMBER OF SHOWS:** Tour now to commence on September 17, 2019 and ending October 10, 2019, or on the dates as agreed by the parties in mutual consent. Still 24 shows in total.

European & UK Radius & Exclusivity Clause: 60 Days before the first performance date and 120 days after last date Artist shall sell all performances in this area solely to J. Noah B.V.

The Artist will not announce this postponement and the new tour dates before Friday April, 12, 8.00 AM (New York time zone).

2. **Section 5 of the Agreement is cancelled, declared void, and replaced with the following** provision:

All payments shall be paid by wire transfer, money order, or cash as follows:
A. $125,000.00 USD already paid by J. Noah to and in the name of Artist account
B. $50,000.00 USD to be paid by J. Noah today and $75,000.00 USD on or before May 17, 2019 to and in the name of Artist account.
C. $250,000.00 USD to be paid by J. Noah to and in the name of Artist account on or before two weeks of each designated show date, in five installments of $50,000.00 USD each until paid in full.
D: Agreed by all parties that any agreed to afterparties will be paid in USD cash upon confirmation of attendance night to Artist or Artist representation on the ground direct.

3. **Section 15 of the Agreement is cancelled, declared void, and replaced with the following** provision:

The total number of shows (24) will remain the same, but the exact dates, Locations and Venues will be agreed in mutual consent between Artist, Purchaser and the promoters.

APRIL 9, 2019

4. Artist acknowledges and approves that the Purchaser is the authorized agent of the Artist with regard to the performances that are subject of this agreement. Purchaser is authorized to collect payments to Artist and to receive documents and notices on Artist's behalf with respect to the subject performance. Purchaser shall have full power and authority to enter on Artist's behalf into agreements with third parties such as promoters or event organizers.

Except as set forth in this Amendment, the Agreement is unaffected and shall continue in full force and effect in accordance with its respective terms. If there is conflict between this Amendment and the Agreement, the terms of this Amendment will prevail.

AGREED TO AND ACCEPTED:

| Zoo Gang Touring f/s/o Fetty Wap | J.Noah B.V. |
|---|---|
| By: _____ | By: _____ |
| An Authorized Signatory | An Authorized Signatory |

APRIL 9, 2014